UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

WILLIAM ERIK DOSS,

Petitioner,

v.

Case No. 00-CV-10030-BC
Honorable David M. Lawson

BARBARA BOCK,

Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

The petitioner, William Erik Doss, a state inmate currently incarcerated at the Saginaw Correctional Facility in Freeland, Michigan, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 alleging that he is in custody in violation of his constitutional rights. He challenges his convictions for first-degree murder and a weapon violation, contending that his state trial was unfair for a variety of reasons resulting in the deprivation of due process of law in violation of the Fourteenth Amendment, and that he was not afforded adequate assistance of competent counsel in violation of the Sixth Amendment. The Court finds that some of Doss' claimed errors were not exhausted in the state courts, others do not amount to a due process violation, and Doss' counsel's performance was not constitutionally deficient. The Court, therefore, will deny the petition.

I.

The petitioner's conviction arises out of the shooting death of Lincoln Wilson on April 16, 1994 in Detroit, Michigan. The killing was connected with an apparent drug transaction in which



the victim was a putative purchaser. Trial testimony indicated that the petitioner had mentioned an intention to rob someone when the victim drove up in his automobile. The petitioner approached the victim's car and then began to walk away after obtaining some money. He then went back toward the car, pulled a gun and shot the victim in the head, killing him.

The petitioner's first trial ended in a mistrial on April 13, 1995 because of a deadlocked jury. On September 25, 1995, a second Recorder's Court jury in Detroit, Michigan convicted the petitioner of first-degree murder, Mich. Comp. Laws § 750.316, and Possession of a Firearm During the Commission of a Felony (felony firearm), Mich. Comp. Laws § 750.227b. The trial court sentenced the petitioner to life in prison for the murder conviction and a consecutive term of two years in prison for the felony firearm conviction.

On June 5, 1996, the petitioner filed a motion for new trial, alleging ineffective assistance of counsel. On April 24, 1997, the trial court held an evidentiary hearing on the petitioner's claim and denied his motion for new trial. The Michigan Court of Appeals subsequently affirmed the petitioner's convictions and life sentence in an unpublished, *per curiam* opinion. *See People v. Doss*, No. 191142 (Mich. Ct. App. March 23, 1999). The Michigan Supreme Court denied a subsequent application for leave to appeal because it was "not persuaded that the question[s] presented should be reviewed . . . ." *People v. Doss*, No. 114879 (Mich. Sup. Ct. Dec. 28, 1999).

On February 7, 2000, the petitioner filed his habeas corpus petition, and on May 10, 2000, he filed an amended petition. His supporting brief, filed on August 4, 2000, alleges:

I.   PETITIONER WAS DENIED DUE PROCESS AND A FAIR TRIAL BY THE PROSECUTOR'S MISCONDUCT, WHERE THE PROSECUTOR SOUGHT SYMPATHY FOR THE VICTIM AND FAMILY, APPEALED TO CIVIC DUTY, AND USED IMPEACHMENT EVIDENCE AS SUBSTANTIVE [EVIDENCE].

-2-

II.    PETITIONER WAS DENIED DUE PROCESS AND EQUAL
       PROTECTION OF THE LAW WHERE THE EVIDENCE WAS
       INSUFFICIENT TO PROVE EVERY ELEMENT OF THE CRIME
       CHARGED BEYOND REASONABLE DOUBT.

III.   PETITIONER WAS DENIED EFFECTIVE ASSISTANCE OF
       COUNSEL WHERE COUNSEL FAILED TO PRODUCE
       WITNESSES, AND STIPULATED TO PRIOR TRIAL
       TESTIMONY, AND FAILED TO OBJECT TO THE
       PROSECUTOR'S FLAGRANT MISCONDUCT, IMPROPER
       ARGUMENTS, AND REMARKS, COUNSEL FURTHER FAILED
       TO OBJECT TO INADMISSIBLE EVIDENCE OF AN
       UNRELATED MURDER.

IV.    PETITIONER WAS DENIED A FAIR TRIAL AND RIGHT TO
       CONFRONTATION WHEN TRIAL COUNSEL WITHOUT
       PROOF OF UNAVAILABILITY, STIPULATED TO A WITNESS'
       PRIOR TRIAL TESTIMONY.

V.     PETITIONER WAS DENIED DUE PROCESS AND EQUAL
       PROTECTION OF THE LAW WHEN [THE] TRIAL COURT
       ABUSED ITS DISCRETION BY DENYING PETITIONERS [SIC]
       MOTION FOR A NEW TRIAL WHERE THE VERDICT WAS
       AGAINST THE GREAT WEIGHT OF THE EVIDENCE.

VI.    PETITIONER WAS DENIED A FAIR TRIAL AND DUE
       PROCESS WHEN THE TRIAL COURT REFUSED TO GIVE A
       REQUESTED CAUTIONARY INSTRUCTION ON THE USE OF
       IMPEACHMENT EVIDENCE AND FAILED TO GIVE A PROPER
       LIMITING INSTRUCTION ON SIMILAR, BAD, AND OTHER
       ACTS.

VII.   PETITIONER WAS DENIED A FAIR TRIAL AND DUE
       PROCESS OF THE LAW WHEN THE TRIAL COURT FAILED
       TO ASCERTAIN ON THE RECORD WHETHER THE
       PETITIONER INTELLIGENTLY AND KNOWINGLY WAIVED
       HIS RIGHT TO TESTIFY AND SAME PREJUDICED HIS
       ABILITY TO DEFEND AGAINST THE CHARGES.

VIII.  PETITIONER WAS DENIED A FAIR TRIAL WHEN THE TRIAL
       COURT ALLOWED THE PROSECUTOR TO INTRODUCE
       EVIDENCE OF OTHER AND SIMILAR ACTS WITHOUT
       GIVING THE REQUISITE NOTICE UNDER MRE 404(b)(2).

-3-

IX. PETITIONER WAS DENIED A FAIR TRIAL AND DUE PROCESS OF THE LAW WHERE THE TRIAL COURT ALLOWED A MULTIPLICITY OF ERRORS AND THE CUMULATIVE EFFECT CAUSED PREJUDICE.

The respondent filed a partial answer addressing only the petitioner's initial habeas petition, which does not contain all the claims asserted in the amended petition or in the petitioner's supporting brief. The respondent alleges that the petitioner failed to mail a copy of his brief to her. Nonetheless, the respondent urges the Court to deny the habeas petition on the merits.

II.

The respondent, in its answer, "neither admits nor denies" the petitioner's allegation that he exhausted his state court remedies. Even such an anemic response as this will not constitute an abandonment of the exhaustion requirement, however, because of the express waiver requirement of 28 U.S.C. § 2254(b)(3). Consequently, a threshold issue in this case is whether the petitioner exhausted state remedies for his claims.

The doctrine of exhaustion of state remedies requires state prisoners to fairly present their claims to the state courts before raising those claims in a federal habeas corpus petition. *See* 28 U.S.C. § 2254(b)(1)(A) and (c); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845. A claim is "fairly presented" to the state courts if it "(1) relie[s] upon federal cases employing constitutional analysis; (2) relie[s] upon state cases employing federal constitutional analysis; (3) phras[es] the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional

-4-

right; or (4) allege[s] facts well within the mainstream of constitutional law." *McMeans*, 228 F.3d
at 681.

The petitioner did not raise his eighth claim (lack of notice under Mich. R. Evid. 404(b)(2))
in the Michigan Court of Appeals, and he did not raise his fifth claim (denial of motion for new trial)
in the court of appeals as a federal constitutional claim. Thus, state remedies for these two claims
technically are unexhausted, and the "mixed petition" is subject to dismissal. *Rose v. Lundy*, 455
U.S. 509, 518-19 (1982). The Court, nevertheless, will adjudicate the petitioner's claims, rather than
dismiss the mixed petition on exhaustion grounds, because (1) the unexhausted claims allege non-
cognizable violations of state law, and (2) the habeas petition must be denied in its entirety. 28
U.S.C. § 2254(b)(2); *Rockwell v. Yukins*, 217 F.3d 421, 424 (6th Cir. 2000).

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132,
110 Stat. 1214, altered the standard of review federal courts must apply when reviewing applications
for a writ of habeas corpus. The AEDPA applies to all habeas petitions filed after the effective date
of the Act, April 24, 1996. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997). Because the petitioner's
application was filed after April 24, 1996, the provisions of the AEDPA, including the amended
standard of review, apply to this case.

As amended, 28 U.S.C. § 2254(d) imposes the following standard of review that a federal
court must utilize when reviewing applications for a writ of habeas corpus:

An application for a writ of habeas corpus on behalf of a person in custody pursuant
to the judgment of a State court shall not be granted with respect to any claim that
was adjudicated on the merits in State court proceedings unless the adjudication of
the claim –

(1)     resulted in a decision that was contrary to, or involved an
        unreasonable application of, clearly established Federal law, as

-5-

determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Franklin v. Francis*, 144 F.3d 429 (6th Cir. 1998). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1)("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also Cremeans v. Chapleau*, 62 F.3d 167, 169 (6th Cir. 1995) ("We give complete deference to state court findings unless they are clearly erroneous").

The United States Supreme Court has explained the proper application of the "contrary to" clause as follows:

A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . . A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

With respect to the "unreasonable application" clause of § 2254(d)(1), the United States Supreme Court held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause when "a state-court decision unreasonably applies the law of this

Court to the facts of a prisoner's case." *Id.* at 409. The Court defined "unreasonable application"

as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask
> whether the state court's application of clearly established federal law was
> objectively unreasonable. . . .
>
> [A]n unreasonable application of federal law is different from an incorrect
> application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application"
> clause, then, a federal habeas court may not issue the writ simply because that court
> concludes in its independent judgment that the relevant state-court decision applied
> clearly established federal law erroneously or incorrectly. Rather, that application
> must also be unreasonable.

*Id.* at 409-11.

With these standards in mind, the Court proceeds to the merits of the petition for a writ of

habeas corpus.

A.

The petitioner's first claim is that the prosecutor deprived him of a fair trial by seeking

sympathy for the victim and his family, by appealing to the jurors' civic duty, and by using

impeachment evidence as substantive evidence. The petitioner failed to object to the disputed

conduct at trial, and the Michigan Court of Appeals declined to consider the merits of the petitioner's

claim on the basis of the petitioner's failure to follow the procedural requirement.

The doctrine of procedural default provides:

> In all cases in which a state prisoner has defaulted his federal claims in state court
> pursuant to an independent and adequate state procedural rule, federal habeas review
> of the claims is barred unless the prisoner can demonstrate cause for the default, and
> actual prejudice as a result of the alleged violation of federal law, or demonstrate that
> failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson,* 501 U.S. 722, 750 (1991). Such a default may occur if the state prisoner files

-7-

an untimely appeal, *Coleman,* 501 U.S. at 750, if he fails to present an issue to a state appellate court at his only opportunity to do so, *Rust v. Zent,* 17 F.3d 155, 160 (6th Cir. 1994), or if he fails to comply with a state procedural rule that required him to have done something at trial to preserve his claimed error for appellate review, e.g., to make a contemporaneous objection, or file a motion for a directed verdict. *United States v. Frady,* 456 U.S. 152, 167-69 (1982); *Simpson v. Sparkman,* 94 F.3d 199, 202 (6th Cir. 1996). Application of the cause and prejudice test may be excused if a petitioner "presents an extraordinary case whereby a constitutional violation resulted in the conviction of one who is actually innocent." *Rust,* 17 F.3d at 162; *Murray v. Carrier,* 477 U.S. 478, 496 (1986).

For the doctrine of procedural default to apply, a firmly established state procedural rule applicable to the petitioner's claim must exist, and the petitioner must have failed to comply with that state procedural rule. *Warner v. United States,* 975 F.2d 1207, 1213-14 (6th Cir. 1992), *cert. denied,* 507 U.S. 932 (1993). Additionally, the last state court from which the petitioner sought review must have invoked the state procedural rule as a basis for its decision to reject review of the petitioner's federal claim. *Coleman,* 501 U.S. at 729-30. "When a state court judgment appears to have rested primarily on federal law or was interwoven with federal law, a state procedural rule is an independent and adequate state ground only if the state court rendering judgment in the case clearly and expressly stated that its judgment rested on a procedural bar." *Simpson,* 94 F.3d at 202. Whether the independent state ground is adequate to support the judgment is itself a federal question. *Lee v. Kemna,* 534 U.S. 362, 122 S. Ct. 877, 885 (2002).

If the last state court from which the petitioner sought review affirmed the conviction both on the merits, and, alternatively, on a procedural ground, the procedural default bar is invoked and

-8-

the petitioner must establish cause and prejudice in order for the federal court to review the petition. *Rust*, 17 F.3d at 161. If the last state court judgment contains no reasoning, but simply affirms the conviction in a standard order, the federal habeas court must look to the last reasoned state court judgment rejecting the federal claim and apply a presumption that later unexplained orders upholding the judgment or rejecting the same claim rested upon the same ground. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

The procedural rule in question in this case is the requirement that a criminal defendant object to improper prosecutorial conduct in order to preserve a prosecutorial misconduct claim for appellate review. *See Peopie v. Ullah*, 216 Mich. App. 669, 679, 550 N.W.2d 568, 574 (1996) (citing *People v. Stanaway*, 446 Mich. 643, 687, 521 N.W.2d 557, 579 (1994)). The petitioner has admitted that he did not object to the prosecutor's allegedly improper questions, remarks, and arguments, *see* Delayed Application for Leave to Appeal in the Michigan Supreme Court, at 36, and the Michigan Court of Appeals, which provided the last reasoned state court judgment, stated that appellate review of the petitioner's claim was precluded by his failure to object.

The contemporaneous-objection rule was firmly established and regularly followed before the petitioner's 1995 trial. *See, e.g., People v. Buckey*, 424 Mich. 1, 17-18, 378 N.W.2d 432, 440 (1985); *People v. Sharbnow*, 174 Mich. App. 94, 100, 435 N.W.2d 772, 775 (1989). Therefore, the state court's reliance on the petitioner's failure to object to the prosecutor's conduct is an adequate and independent state ground for foreclosing review. *Luberda v. Trippett*, 211 F.3d 1004, 1006-07 (6th Cir. 2000); *Rogers v. Howes*, 144 F.3d 990, 994 (6th Cir. 1998); *see Engle v. Isaac*, 456 U.S. 107, 110 (1982) (concluding that a petitioner who fails to comply with a state rule mandating

contemporaneous objections to jury instructions may not challenge the constitutionality of those instructions in a federal habeas corpus proceeding).

Although the petitioner has not alleged "cause" for his procedural default, he does allege in claims III and IV that his attorney should have objected to the prosecutor's conduct, comments, and arguments. For reasons explained more fully in the discussion of claims III and IV, below, the Court has concluded that defense counsel's performance was not deficient and did not prejudice the defense. Therefore, defense counsel is not cause for the petitioner's state procedural default of failing to object to alleged prosecutorial misconduct.

The Court need not determine if the petitioner was prejudiced by the alleged violation of federal law because he has not shown cause for his noncompliance with a state procedural rule. *See Smith v. Murray,* 477 U.S. 527, 533 (1986). The remaining question is whether this Court's refusal to consider the petitioner's claim on the merits will result in a miscarriage of justice. The exception for miscarriages of justice requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. *Schlup v. Delo,* 513 U.S. 298, 326-27 (1995); *Murray v. Carrier,* 477 U.S. 478, 496 (1986). "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial." *Schlup,* 513 U.S. at 324. The petitioner has not supported his claims with new reliable evidence. His state procedural default therefore bars habeas review of his first claim on the merits.

-10-

B.

The petitioner's second claim challenges the sufficiency of the evidence of premeditation and

deliberation, necessary elements of first-degree murder. *See People v. Morrin*, 31 Mich. App. 301,

328, 187 N.W.2d 434, 448-49 (1971). The second claim is related to the fifth claim, which states

that the trial court abused its discretion by denying his motion for a new trial where the verdict was

against the great weight of the evidence. Turning first to claim number five, the Michigan Court of

Appeals concluded that the trial court did not abuse its discretion in denying a new trial because

"[q]uestions regarding credibility and conflicts in testimony were within the exclusive province of

the jury." *People v. Doss*, No. 191142, at 3. Moreover, the petitioner's claim essentially asserts a

violation of state law, and an alleged violation of Michigan law fails to state a claim on which habeas

relief may be granted. *Austin v. Jackson*, 213 F.3d 298, 300 (6th Cir. 2000) (citing *Pulley v. Harris*,

465 U.S. 37, 41 (1984)); *Sinistaj v. Burt*, 66 F.3d 804, 805, 808 (6th Cir. 1995).

Returning to claim number two, there is no question that "the Due Process Clause protects

the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary

to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). But the

critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is

> whether the record evidence could reasonably support a finding of guilt beyond a
> reasonable doubt. But this inquiry does not require a court to "ask itself whether *it*
> believes that the evidence at the trial established guilt beyond a reasonable doubt."
> Instead, the relevant question is whether, after viewing the evidence in the light most
> favorable to the prosecution, *any* rational trier of fact could have found the essential
> elements of the crime beyond a reasonable doubt.

*Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979) (internal citation and footnote omitted) (emphasis

in original). This "standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 324 n.16.

In Michigan, first-degree premeditated murder requires a finding that the defendant committed a homicide with premeditation and deliberation. *Morrin*, 31 Mich. App. at 328, 187 N.W.2d at 448-49. "To premeditate is to think about beforehand; to deliberate is to measure and evaluate the major facets of a choice or problem." *Id.* at 329, 187 N.W.2d at 449 (footnote omitted).

On this point, the court of appeals in this case summarized the evidence:

> There was testimony that [the petitioner] had talked about robbing someone around the time when the victim, who was presumably looking to buy drugs, drove up. There was testimony that [the petitioner] approached the victim's car, obtained some money, began to walk away from the car, and then returned to the car, pulled out a gun, and shot the victim in the head.

*People v. Doss*, No. 191142, at 3.

Under Michigan law, while the minimum time required to premeditate is "incapable of exact determination, the interval between initial thought and ultimate action should be long enough to afford a reasonable man time to subject the nature of his response to a 'second look.'" *People v. Vail*, 393 Mich. 460, 469, 227 N.W.2d 535, 538 (1975). An opportunity for a "second look" may occur in a matter of seconds, minutes, or hours, depending upon the totality of the circumstances surrounding the killing. *Johnson v. Hofbauer*, 159 F. Supp. 2d 582, 596 (E.D. Mich. 2001) (citing *People v. Berthiaume*, 59 Mich. App. 451, 456, 229 N.W.2d 497, 500 (1975)).

The evidence in this case was sufficient for a rational trier of fact to conclude that the petitioner had time to think about his actions and evaluate his choices between his first and second approaches to the victim. Therefore, the state court's conclusion that the "testimony provided sufficient evidence of premeditation and deliberation to find [the petitioner] guilty of first-degree

murder beyond a reasonable doubt" was a reasonable application of *Winship* and *Jackson*. The petitioner is not entitled to habeas relief on the basis of his challenge to the sufficiency of the evidence. 28 U.S.C. § 2254(d)(1).

C.

The petitioner's third and fourth claims allege ineffective assistance of trial counsel. Specifically, he contends that his attorney (1) failed to demand the production of police officers as witnesses, (2) stipulated to the admission of Cedric Dawson's testimony from the first trial in lieu of his live appearance, (3) failed to object to the prosecutor's misconduct, arguments, and comments, including a reference to an unrelated murder, and (4) failed to request a jury instruction on identification.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-pronged test for determining whether a habeas petitioner has received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This "requires [a] showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687. Second, a petitioner must show that counsel's deficient performance prejudiced petitioner. A petitioner may establish prejudice by "showing that counsel's errors were so serious as to deprive the defendant of a fair trial." *Id.*

The Supreme Court emphasized that, when considering an ineffective assistance of counsel claim, the reviewing court should afford counsel a great deal of deference:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every

effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

*Id.* at 689 (internal citations and quotes omitted).

The Court further explained that, to establish deficient performance, a petitioner must identify acts that were "outside the wide range of professionally competent assistance." *Id.* at 690. To satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. The Sixth Circuit, applying the *Strickland* standard, has held that a reviewing court therefore must focus on whether counsel's alleged errors "have undermined the reliability of and confidence in the result." *McQueen v. Scroggy*, 99 F.3d 1302, 1311 (6th Cir. 1996), *cert. denied*, 520 U.S. 1257 (1997).

1.

The petitioner first contends that his attorney was ineffective for failing to demand that the police officers who responded to the crime scene be produced as witnesses. The petitioner apparently believes that their testimony would have impeached the testimony of other witnesses. Defense counsel, however, testified at the state court evidentiary hearing that there was no evidence to impeach. When the police arrived at the scene of the crime, witnesses denied seeing or hearing

-14-

anything. This evidence was consistent with the testimony of several witnesses at trial who claimed that they did not know who did the shooting. *See* Evid. Hr'g at 8-10.[1]

Moreover, as defense counsel pointed out, the police officers were not themselves eyewitnesses. There was no tactical advantage to having the officers testify about what the purported eyewitnesses stated during subsequent interviews at the police station because the witnesses testified at trial that they lied to the police. The choice not to call or demand production of these officers was a reasonable strategy within the range of professionally competent assistance, and does not form the basis for a Sixth Amendment violation.

2.

The petitioner's next ineffective assistance ground is that his trial attorney should not have stipulated to the admission of Cedric Dawson's testimony from the petitioner's first trial. Since the testimony was damaging to his defense, the petitioner believes that reading the testimony deprived him of his right to confront the witness.

The prosecutor and defense counsel stipulated to the use of Dawson's prior trial testimony because Dawson was ill on the day that he was expected to testify. *See* Tr. 9/21/95 at 4;[2] Evid. Hr'g at 7-8,  12. The trial court concluded that Dawson's testimony from the first trial was admissible

---

[1] "Evid. Hr'g" refers to the transcript of the state court, post-trial evidentiary hearing held on April 24, 1997.

[2] "Tr." refers to the transcript of the petitioner's trial held in September 1995. The record before the Court includes the transcript of trial proceedings held on September 19-21, 1995. Although the trial continued on September 25, 1995, the respondent did not file the transcript for that day. The volume labeled September 25, 1995, is actually part of the transcript from the petitioner's first trial, which is not in dispute here.

-15-

under state law, *see* Tr. 9/21/95 at 42, and both the direct and cross-examination of Dawson at the prior trial was read into the record. *See id.* at 43-72.

The petitioner's trial attorney testified at the evidentiary hearing that he stipulated to the admission of Dawson's prior testimony not only because Dawson was ill during the second trial., but also because he wanted to avoid the possibility that another witness would lie on the stand. *See* Evid. Hr'g at 7-8. Defense counsel claimed at the hearing that he had consulted with the petitioner during trial and that the petitioner consented to waiving Dawson as a witness. *Id.* at 12-13. The petitioner contradicted this statement, testifying at the hearing that he did *not* agree to waive Cedric Dawson's testimony and that he had asked his attorney for a continuance in order to call Dawson as a witness. *Id.* at 22-23.

Nonetheless, the state court found that defense counsel had legitimate reasons for stipulating to the use of Dawson's prior testimony. Because strategic choices by counsel do not rise to the level of a Sixth Amendment violation, *McMeans*, 228 F.3d at 681, defense counsel was not constitutionally ineffective.

3.

The petitioner next asserts that his attorney should have objected to the prosecutor's intimidating conduct toward certain witnesses and his questions about an unrelated murder. Defense counsel testified at the evidentiary hearing that he did not object to the prosecutor's intimidating conduct because he thought the witnesses were obnoxious liars. He did not feel any obligation to protect the witnesses because their lies hurt his case. He would have treated the witnesses similarly if he were the prosecutor. Furthermore, he had hoped that the prosecutor's conduct would reflect poorly on the prosecution's case. *See* Evid. Hr'g at 10-11.

Defense counsel testified that he did not object to references of another murder because it had no relevance to the petitioner's case. *See* Evid. Hr'g at 4-5, 14. In fact, the prosecutor made no attempt to link the other murder to the petitioner. Rather, he appeared to be intimating that the witnesses should be as forthcoming and committed to seeing justice done at the petitioner's trial, where they did not know the victim, as they were in another murder trial where the victim was their friend. Tr. 9/20/95 at 16-21 (Henry Miller's testimony) & at 79 (Joseph Smith's testimony). Defense counsel's failure to object to the prosecutor's intimidating conduct and questions about an unrelated murder did not rise to the level of deficient performance and did not prejudice the defense.

4.

The petitioner also asserts that his attorney should have objected to the prosecutor's introduction of evidence of other acts without giving prior notice of his intent to do so. The petitioner alleges that the prosecutor tried to show that the petitioner was involved in drug trafficking and that he had threatened witnesses.

There was some evidence that the petitioner was involved with illegal drugs. Henry Miller informed the police that, before the shooting, the petitioner needed "dope" and had said that he intended to rob someone. Tr. 9/20/95 at 36. Cedric Dawson testified that the petitioner entered the victim's car, returned with $10, and then announced that he was going to the house where marijuana was sold. Tr. 9/21/95 at 49-50. The petitioner himself admits that there was some evidence that he intended to rob the victim. *See* Br. in Supp. of Habeas Pet. at 12. Furthermore, he was charged with first-degree premeditated murder; he was not prejudiced by evidence that he may have been involved with minor quantities of illegal drugs.

-17-

As for the alleged threats, the prosecutor briefly asked one witness whether his professed loss of memory was due to someone having threatened him. The witness responded negatively, and no reference was made to the petitioner. Tr. 9/20/95 at 50. The petitioner was not prejudiced by this isolated question.

5.

The petitioner's final allegation about defense counsel is that trial counsel should have requested a jury instruction relating to evaluating the identification evidence. The petitioner believes that the conflicting identification testimony of him as the shooter was not credible.

The Michigan Court of Appeals found "no manifest injustice in the failure to give the eyewitness identification instruction" because the petitioner "was known to the witnesses at the time of the shooting." *People v. Doss*, No. 191142, at 2. This Court agrees with the state court's conclusion that, for the same reason, defense counsel was not ineffective for failing to request a cautionary jury instruction on identification testimony.

The Michigan Court of Appeals concluded its review of all of the petitioner's ineffective assistance claims by observing that "the claimed errors involved matters of trial strategy." *Id.* at 3. The court of appeals held that the petitioner had "failed to overcome the presumption of sound trial strategy" and also "failed to show that he was prejudiced by counsel's alleged errors." *Id.* The state court's findings and conclusions were not contrary to, nor did they constitute an unreasonable application of, the prevailing Supreme Court standard for evaluating the performance of trial under the Sixth Amendment as set forth in *Strickland*. The petitioner's fourth and fifth claims do not support granting the writ of habeas corpus. 28 U.S.C. § 2254(d)(1).

-18-

D.

The petitioner's sixth claim is that he was denied due process and a fair trial because the trial court did not instruct the jury on the limited use of prior statements introduced for impeachment purposes, nor was a limiting instruction given concerning similar act testimony admitted under Mich. R. Evid. 404(b). We will address each claim in turn.

1.

The petitioner asserts that a jury instruction on the prosecution's use of witnesses' prior inconsistent statements would have guided the jury's consideration of these statements, limiting them to their impeachment value only. He contends that without the jury instruction, the jury likely considered the witnesses' prior inconsistent statements as substantive evidence of his guilt or innocence rather than as impeachment evidence. The petitioner alleges that, as a result, he was denied a fair trial.

The Michigan Court of Appeals found that the trial court should have given a jury instruction on prior inconsistent statements, but that any error in failing to do so was harmless. The question before this Court is whether, under 28 U.S.C. § 2254(d), the state court's finding of harmless error was contrary to, or involved an unreasonable application of, *Chapman v. California*, 386 U.S. 18, 23-24 (1967), which holds that constitutional errors may be treated as harmless unless a court can conclude, beyond a reasonable doubt, that the error complained of might have contributed to the defendant's conviction. *See Barker v. Yukins,* 199 F.3d 867, 872 & 872 n.4 (6th Cir.) (quoting *Nevers v. Killinger*, 169 F.3d 352, 362 (6th Cir.), *cert. denied*, 527 U.S. 1004 (1999)), *cert. denied*, 530 U.S. 1229 (2000). "[A] state court's determination is considered 'unreasonable' in the harmless

-19-

error context, if it is simply proven that the error had a substantial and injurious effect or influence

in determining the jury's verdict and resulted in actual prejudice . . . ." *Id.* at 876.

Most of the key prosecution witnesses in this case implicated the petitioner in their

statements to the police. The witnesses repudiated those statements, for the most part, at trial.

However, as explained by the Michigan Court of Appeals:

> . . . One witness also gave testimony implicating [the petitioner] at the preliminary
> examination. While the earlier statements to the police were, indeed hearsay,
> admissible for impeachment purposes only, and not as substantive evidence, the
> preliminary examination testimony and testimony from the first trial was not hearsay,
> and could properly be considered as substantive evidence. MRE 801(d)(1)(A).
>
> Henry Miller was impeached with his prior statement to police and with his
> preliminary examination testimony. Because the preliminary examination testimony
> largely overlapped the police statement, [the petitioner] was not prejudiced by the
> court's failure to restrict the use of the police statement.
>
> Joe Smith was impeached to a limited extent with testimony from the first
> trial, which was admissible as substantive evidence, and to a much greater extent
> with his statement to police. Although Smith denied the truth of parts of the
> statement to police, stating that he did not in fact see [the petitioner] go to the car a
> second time, he also testified that he told the police the truth. Under these
> circumstances, a proper instruction would have permitted the jury to consider the
> statement as substantive evidence if the jury believed Smith's trial testimony that he
> told the police the truth. We find no prejudice with respect to Smith.
>
> Similarly, Darrell Bailey was impeached with his prior statement to the
> police. However, he then admitted the truth of his prior statement, although he
> wavered somewhat from this position on cross-examination. Given Bailey's trial
> testimony that he told police the truth and admitting the truth of most of his statement
> to police, [the petitioner] was not prejudiced by the court's failure to give the limiting
> instruction.
>
> Alandis Hill was impeached with his statement to the police and with his
> testimony from the first trial. His prior trial testimony was admissible as substantive
> evidence, MRE 801(d)(1)(A), and that testimony was consistent with the police
> statement. We therefore find no reversible error respecting Hill's testimony.

-20-

The final witness [the petitioner] raises, Latasha McCullough, was not impeached with any prior inconsistent statements. Under these circumstances, the trial court's failure to give a cautionary instruction on impeachment by prior inconsistent statement does not warrant reversal or a new trial. MCL 769.26; MSA 28.1096.

*People v. Doss*, No. 191142, at 1-2.

This Court finds that the reasoning of the state court of appeals is sound and supported by the record. In light of the admissible evidence, which included prior testimony, the result of the trial likely would have been the same if the trial court had instructed the jury on prior inconsistent statements. The lack of a jury instruction on prior inconsistent statements could not have had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623, 637 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). The state court's finding of harmlessness was thus a reasonable application of *Chapman*, and the petitioner has no right to habeas relief on the basis of his claim.

2.

The petitioner's second challenge to the jury instructions concerns the trial court's failure to instruct the jury on the use of evidence of other acts, such as illegal drug activity and threats to witnesses, for which the petitioner was not on trial. The Michigan Court of Appeals did not address this claim because the petitioner "failed to identify or provide cites to the transcript of any specific instance of bad acts evidence being admitted, and because [the petitioner] did not request an instruction below and expressed satisfaction with the jury instructions given." *People v. Doss*, No. 191142, at 3 (citations omitted).

Although the petitioner alleges that defense counsel should have objected to the admission of other acts evidence, he has not alleged "cause" for the failure to request a jury instruction on

evidence of other acts. The petitioner also has failed to allege resulting prejudice and a miscarriage of justice. Accordingly, the petitioner's multiple state procedural defaults – failing to request a jury instruction about "other acts" evidence, failing to object to the jury instructions as given, and failing to properly document the issue in the state court of appeals – bars habeas review of his claim on the merits. *Coleman*, 501 U.S. at 750; *Harris*, 489 U.S. at 263; *Seymour*, 224 F.3d at 549-50.

E.

The petitioner's seventh claim is that he was denied due process and a fair trial when the trial court failed to ascertain on the record whether he intelligently and knowingly waived his right to testify. The Michigan Court of Appeals disposed of this claim by noting that there is no such requirement under Michigan law. *See People v. Harris*, 190 Mich. App. 652, 661-62, 476 N.W.2d 767, 772 (1991). Nor is there a federal constitutional requirement that a trial court place a waiver of the right to testify on the record. *United States v. Webber*, 208 F.3d 545, 551-52 (6th Cir.), *cert. denied*, 531 U.S. 882 (2000). The petitioner does not allege that he sought to testify, he made no such claim in the post-trial evidentiary hearing challenging the competence of his trial counsel, and the record does not reveal any evidence of a desire to testify. Accordingly, the petitioner's seventh claim does not entitle him to habeas relief.

F.

The petitioner's eighth claim is that the trial court deprived him of a fair trial by permitting the prosecutor to introduce evidence of the petitioner's and certain witnesses' wrongful acts without giving prior notice. Under Mich. R. Evid. 404(b)(2), prosecutors must provide reasonable notice prior to or during trial before seeking to admit evidence of a person's other acts.

A habeas court, however, may grant relief only if the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §§ 2241(c)(3) and 2254(a). Consequently, the petitioner's allegation that the trial court and prosecutor violated a state law relating to notice fails to state a claim on which habeas relief may be granted, unless the lack of notice rises to the level of a due process violation. *Austin*, 213 F.3d at 300. The petitioner has made no such claim here, and the Court finds none in the trial record. The petitioner's eight claim will not support the issuance of the writ.

G.

The petitioner's ninth and final claim is that the cumulative effect of the trial errors deprived him of a fair trial and due process of law. "Cumulative error analysis is relevant when there were certain errors at trial which, when considered alone may not deprive a person of due process, but may cumulatively produce a trial that is fundamentally unfair." *United States v. Mays*, 69 F.3d 116, 123 (6th Cir. 1995). The Court has concluded from a review of the record that the alleged errors, even when considered collectively, did not deprive the petitioner of a fundamentally fair trial. The Court finds that the petitioner was convicted on the basis of properly admitted evidence, and the jury instruction failures did not undermine the confidence in the outcome of the trial. Accordingly, the petitioner's final claim does not entitle him to habeas corpus relief.

III.

The petitioner's first claim and a portion of his sixth claim are barred from habeas review on the merits by the petitioner's state procedural defaults. His other claims are either not cognizable on habeas review or lack merit.

-23-

Accordingly, it is **ORDERED** that the petition for writ of habeas corpus is **DENIED** with

prejudice.

DAVID M. LAWSON
United States District Judge

Dated:   July 15, 2002

Copies sent to:   William Doss - #245820
                  Mary D. Morrow, Esquire

-24-